**Fitzroy George BROWN, Appellant,**

v.

**The STATE of Texas.**

No. 356–96.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 12, 1997.

Gary A. Udashen, Dallas, for appellant.

Michael J. Sandlin, Asst. District Attorney, Dallas, Matthew Paul, State's Atty., Austin, for State.

Before the court en banc.

### OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

KELLER, Judge.

We granted review in the present case to determine an issue left open by our prior decisions in *Price v. State*, 866 S.W.2d 606 (Tex.Crim.App.1993) and *Ray v. State*, 919 S.W.2d 125 (Tex.Crim.App.1996): whether the failure to give certain information required by Article 42.12 § 5(a)[1] alone renders a defendant's guilty plea involuntary when deferred adjudication was an element of a plea agreement between the parties. The Court of Appeals held that the failure to inform the defendant of the consequences of a revocation of deferred adjudication as required by § 5(a) did not render the guilty plea involuntary under those circumstances. We will affirm.

---

1. Unless otherwise provided, all references to articles and sections are to the version of the Texas Code of Criminal Procedure in effect at the time the offense was committed.

## I.

Appellant was charged by indictment with delivery of cocaine on or about December 5, 1989. On May 31, 1991, appellant entered a plea of guilty, and pursuant to a plea agreement, the trial court placed him on deferred adjudication for ten years. Before accepting the plea agreement, the trial court advised appellant that he could be sentenced to the full range of punishment for the offense if his deferred adjudication probation were revoked. The trial court also asked appellant if he fully understood the consequences of deferred adjudication, and appellant answered in the affirmative. However, the trial court did not convey to appellant all the information required by § 5(a).[2] The State subsequently filed a motion to proceed to adjudication of guilt, and on February 11, 1993, the trial court adjudicated appellant guilty and imposed a sixty year prison sentence.

The Court of Appeals affirmed, holding that the statute does not require the trial court to give the § 5 information *before* accepting a defendant's guilty plea. *Brown v. State*, 915 S.W.2d 533 (Tex.App.—Dallas 1995). Because the information need not be given before acceptance of the plea, the court reasoned, the failure to give such information cannot render a guilty plea involuntary. On discretionary review, appellant claims that the failure of the trial court to give this information renders his guilty plea involuntary in violation of the statute, the Due Process clause of the Fourteenth Amendment to the United States Constitution, and the Due Course of Law clause found in Article I § 19 of the Texas Constitution.

## II.

■ We initially note that a trial court's failure to admonish a defendant about the consequences of a violation of deferred adjudication probation does not constitute a due process violation. *McNew v. State*, 608 S.W.2d 166, 172–173 (Tex.Crim.App.1978); *Price*, 866 S.W.2d at 611.[3] The question then becomes: did the Legislature, by requiring the trial judge to impart certain information, create the basis for an involuntariness claim?

■ The starting point in an analysis of the meaning of any statute is, of course, the language of the statute itself. When the language of a statute is unambiguous, we must give effect to the plain meaning of the words unless doing so would lead to absurd results. *Boykin v. State*, 818 S.W.2d 782, 785–786 & 786 n. 4 (Tex.Crim.App.1991). When the language of a statute is ambiguous, we may look to extratextual factors for guidance in determining the statute's meaning. *Id.* Twice before, we have addressed the meaning of the statute under consideration primarily based upon its language and the language and effect of other relevant provisions. In *Price*, we held that § 5(a) did not require a misdemeanor defendant to be informed of the possible consequences of a violation of deferred adjudication probation prior to his plea. In *Ray*, we held that the failure to give the § 5 information to a felony defendant prior to a non-negotiated (open) guilty plea did not render the plea involuntary.

In both cases, we observed that the deferred adjudication statute fails to specify *when* the information must be provided. *Price*, 866 S.W.2d at 610; *Ray*, 919 S.W.2d at 127. We also recognized that the language of the provision at issue draws no relevant

---

**2.** That section required the trial court to "inform the defendant orally or in writing of the possible consequences under Subsection (b) of this section of a violation of community supervision." Subsection (b) provided as follows:

On violation of a condition of community supervision imposed under Subsection (a) of this section, the defendant may be arrested and detained as provided in Section 21 of this article. The defendant is entitled to a hearing limited to the determination by the court of whether it proceeds with an adjudication of guilt on the original charge. No appeal may

be taken from this determination. After an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal continue as if the adjudication of guilt had not been deferred.

**3.** Because appellant does not argue that the Texas Constitution provides more protection than the United States Constitution in the present context, we decline to address his state constitutional claim separately. *See Johnson v. State*, 853 S.W.2d 527, 533 (Tex.Crim.App.1992).

distinction between misdemeanors and felonies. *Price,* 866 S.W.2d at 611; *Ray,* 919 S.W.2d at 126. In *Ray,* we observed that the informational requirement appears in the text of the statute *after* language outlining the order of proceedings resulting in the placement of the defendant upon deferred adjudication probation. 919 S.W.2d at 126. We found that the order in which the language appears "supports the view that a defendant need not be informed of the § 5(b) consequences until after he is placed on probation." *Id.* We also pointed out that Article 26.13 dictates the admonishments required before a guilty plea may be accepted, and we noted that the Legislature could have, but did not, include deferred adjudication admonishments in Article 26.13. *Id.* We further explained that the deferred adjudication information does not become relevant until after a defendant is placed on deferred adjudication probation and that there is no policy reason for requiring deferred adjudication information before every plea of guilty. *Id.* at 126–127. Hence, in *Price* and *Ray,* we have recognized that some support exists in the language of Article 42.12 § 5 for the proposition that imparting the § 5 information is not a precondition for a voluntary plea.

But, our holdings in *Price* and *Ray* were also supported by factors peculiar to the plea situations in those cases. In *Price,* we explained that "germane procedural statutes" treat "preliminary and underlying proceedings" in misdemeanors differently from those in felonies.[4] 866 S.W.2d at 611. We held that, under the procedural statutes in effect at the time, a misdemeanor defendant need not be present during the guilty plea proceedings so long as he is represented by counsel. *Id.* Moreover, in *Ray* we explained that a felony defendant who pleads guilty without the benefit of a plea bargain faces the exact same consequences at the time of his plea as he might later face upon adjudication because he has exposed himself to the full range of punishment without a guarantee that he will be placed upon deferred adjudication. 919 S.W.2d at 127. By contrast, where deferred adjudication is an element of a plea agreement, the defendant does not face the same consequences at the time of his plea as he might face later upon adjudication: he has a guarantee that he will get deferred adjudication or be permitted to withdraw his plea. *See* Article 26.13(a)(2). A plea-bargaining defendant could rationally contend that he would not have pled guilty if he had known about the consequences of a revocation of deferred adjudication.

Due to analytical differences between a negotiated felony plea and the situations in *Price* and *Ray,* we cannot automatically conclude that those decisions dictate the outcome in the present case. While there is some support in the language of Article 42.12 for holding that a failure to give the § 5 information does not render a plea involuntary under any circumstances, that language is ambiguous. The statute does not specify when the information should be given nor does it explain the effect of a trial court's failure to give the information. The order in which the informational requirement appears in the text and the Legislature's failure to place that requirement within Article 26.13 are clues to the statute's meaning but are not unambiguous. Those clues strongly indicate that the § 5 information does not occupy the same status as an Article 26.13 admonishment. However, that does not foreclose the possibility that failing to give the § 5 information may render a guilty plea involuntary under some circumstances. In neither *Price* nor *Ray* did we attempt to examine the legislative history of Article 42.12 § 5, nor did we engage in much analysis beyond the language of the statutory provision except to analyze the language and effect of other statutory provisions. In those cases, such an inquiry was unnecessary and improper under *Boykin* because we were able to determine from the clues in the statutory language and from the nature of the pleas involved that a trial judge's failure to impart the required information would not render involuntary the types of guilty pleas that were before us. But in the present case, the nature of the plea does not preclude a finding of involuntariness. Therefore, we must look to extra-

---

4. We noted in *Price* that at least some of these procedural differences no longer exist under the current statutory scheme. 866 S.W.2d at 611 n. 7.

textual factors to determine the effect of the statutory provision in a negotiated plea setting.

### III.

The legislature has given some guidance as to the factors we may examine in construing the statute. We may consider, among other matters, the

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provision.

Tex.Gov't.Code, § 311.023.[5]

First, we shall examine the circumstances under which the statute was enacted and the legislative history. The informational requirement contained in § 5 was not always present in the statute—the language was inserted into the Code of Criminal Procedure by the Legislature in 1989. *See* Acts 1989, 71st Legislature, Ch. 785 § 4.17. Before this language was added to the statute, this Court had held that Article 26.13 did not require—and hence no statute required—that a defendant be informed about the consequences of a revocation of deferred adjudication. *Shields v. State*, 608 S.W.2d 924, 927 (Tex. Crim.App.1980); *McNew*, 608 S.W.2d at 177 (on rehearing); *Price*, 866 S.W.2d at 611. The addition of this language to Article 42.12 § 5 was a very small part of a bill that made significant changes in Texas' correctional system and throughout the Code of Criminal Procedure. In the legislative history, we have found two excerpts relevant to the issue

at hand. The first occurred during hearings in the House Corrections Committee:

[Question about why the bill contained an information requirement concerning consequences of a revocation of deferred adjudication].

*Gary Kannsteiner* (Leg.Council): I think it's unfair, that some folks just didn't realize what they're getting into with deferred adjudication. We had rather unsophisticated defendants, who thought that they were getting—some sort of break—They never had an adjudication. They kind of go in with—

*Voice 2:*—They don't know about it now?—

*Kannsteiner:*—I think the theory is, this is a—I guess you could say this is a pro-defense statement—

[Several voices]

*Unidentified:* This is whether they know you can be screwed big time—

*Unidentified:* You're absolutely right, Gary—

*Voice 3* (possibly Rep. Hightower, sponsor of the bill): Most importantly, when you get deferred adjudication, you may get deferred for ten years. Normally, in a regular probation, you are sentenced for ten years and you are probated for ten years. When you go back and your probation is revoked, all they can send you up to the pen for is ten years. But not in deferred adjudication. You get deferred adjudication, and you're going for—for a first degree felony, and you're subject, upon revocation for life prison—for a life term of imprisonment.

*Voice 2:* I think it depends on ... [garbled voices] ... he has to be informed on what he's doing ...

*Voice 3:* That's all this is doing. It's just making sure that the guy knows that, hey you might have gotten six years deferred adjudication, but buddy if you screw up, I can come back here and sentence you to life in prison....

---

**5.** This provision is part of the "Code Construction Act," which applies to the Code of Criminal Procedure, at least to the extent it has been amended or reenacted by the 60th or subsequent legislature. Tex.Gov't Code § 311.002(2). *Pos-*

*tell v. State*, 693 S.W.2d 462, 464 (Tex.Crim.App. 1985); *Barbee v. State*, 432 S.W.2d 78, 82 (Tex. Crim.App.1968), *cert. denied*, 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241 (1969).

[Subsequent discussion on requirement that defendant acknowledge receiving information concerning consequences of deferred adjudication].

*Unidentified* (perhaps Voice 3): . . . shall acknowledge on record that he understands it—

*Voice 4:* What if he refuses to acknowledge—

[Garbled voices]

*Unidentified:* Then he goes to trial.

*Voice 3:* Then he's not going to get deferred adjudication.

[Laughter, garbled voices].

Public Hearing, House Corrections Comm., April 23, 1989, HB 2335, Tape 7, Side B.

This discussion shows a concern for defendants being unaware of the difference between deferred adjudication and regular probation. The participants in the discussion apparently believed that the ignorance of many defendants of the consequences of a revocation of deferred adjudication posed fairness problems. To remedy the perceived lack of fairness, the bill imposed a duty upon the trial court to give certain information to defendants who were placed upon deferred adjudication. The discussion is still unclear, however, as to when the information should be given. Kannsteiner's statement about some defendants "not realizing what they were getting into" may suggest that a judge should inform a defendant about the consequences of deferred adjudication probation before the defendant is actually placed on probation. In a negotiated plea context (where deferred adjudication is an element of the plea bargain), such information would have to be given before the plea agreement was accepted by the trial judge because the refusal to impose deferred adjudication would constitute a rejection of the plea agreement. On the other hand, Voice 3's statement that "you might have *gotten* deferred adjudication, but buddy if you screw up" indicates that the Legislature may have contemplated that the information would be given after a defendant had been placed on probation. The House bill originally contained a provision requiring the defendant to acknowledge his receipt of the required information. The discussion indicates that a refusal to acknowledge the information would prevent the imposition of deferred adjudication—perhaps an indication that the information would be conveyed before a defendant was placed upon probation, and hence, before acceptance of a plea bargain. However, the acknowledgment section was subsequently dropped from the bill and does not now appear in the statute. All that can be gleaned for certain from the House discussion is that the Legislature believed the information to be important. But, several interpretations are possible as to why the information is considered important, including: (1) so that a defendant can evaluate intelligently the character of the plea agreement in relation to the range of punishment or other plea offers; (2) so that a defendant can decide intelligently whether to accept deferred adjudication; and (3) so that a defendant can intelligently conform his behavior during probation knowing that the consequences of a violation of probation may be severe.

The second excerpt relating to deferred adjudication occurred during hearings in the Senate Criminal Justice Committee:

*Judge Lykos:* Ah, on this [admonishment] on deferred adjudication, I have the defense attorney do it on a record, and I do it on a record. Could we have that orally or in writing? I don't see any reason why it should be in writing also if I take the time to do it.

*Sen. McFarland* (Senate cosponsor): You understand why that's in there?

*Lykos:* I just—

*McFarland:* Why the admonishment is there for sure—

*Lykos:* It's in there because—for the same reason why I'm doing it.

*McFarland:* You're doing it right.

*Lykos:* See, we don't get writs in my court. There's no habeas corpus. When we get through with a plea it's a—

*McFarland:* My question, would you have a problem if it was orally or in writing—

*Lykos:* No sir.

*McFarland:*—and if orally that it's recorded so you have the evidentiary proof?

*Lykos:* No problem. It's excellent.

Public Hearing, Senate Criminal Justice Comm., May 16, 1989, HB 2335, Tape 1, 1:00 p.m., Transcript, p. 12.

The discussion between Judge Lykos and Senator McFarland centered around whether a trial judge would be required to give *both* written and oral warnings or whether he *would be permitted to give either* written or oral warnings. During that discussion, Judge Lykos and Senator McFarland briefly and cryptically discussed the reason for giving the warnings. Neither person actually explained what that reason was, except to prevent the litigation of writs of habeas corpus. Apparently, they believed that the failure to give the information might result in an issue being raised on such a writ, but no indication was given as to what that issue might be. "Voluntariness of the plea" is, of course, one possibility.

While the legislative history may supply some evidence that an involuntariness claim was contemplated, one other provision in the text of Article 42.12 § 5 that has not previously been discussed may cast the legislative history in a different light. The statute provides the defendant an absolute right to obtain an adjudication of guilt if he files a motion to do so within thirty days after entering his plea and being placed upon deferred adjudication. Article 42.12 § 5(a). The thirty-day adjudication provision appears at the end of § 5(a) after the informational requirement. If, as we previously stated, placement of the informational requirement in the text after the order of plea proceedings is some evidence that the information need not be conveyed until after those proceedings, it logically follows that placement of the informational requirement *before* the thirty-day adjudication provision is some evidence that the information should be conveyed before the thirty days expires. Under that interpretation, a defendant who was not admonished would not be able to challenge his plea, but he could argue that he was deprived of the ability to determine intelligently whether to move for adjudication within the thirty-day period. Hence, the statute arguably provides a remedy for failure to receive the required information other than challenging the voluntariness of the plea.

Moreover, the statute has recently been amended to specify that the information be given after a defendant is placed on deferred adjudication probation. Article 42.12 § 5(a)(1996). The statute further specifies that a judge's failure to give the information "is not a ground for reversal unless the defendant shows that he was harmed by the failure of the judge to provide the information.". *Id.* Although the recent amendments to the statute do not apply to appellant's case, those amendments may be some evidence of the legislature's intent where, as in this case, they appear to be a response to appellate court decisions construing the statute. *See and compare Ray v. State,* 877 S.W.2d 425 (Tex.App.—Eastland 1994)(failure to give § 5 information renders guilty plea involuntary), *rev'd,* 919 S.W.2d 125 (Tex. Crim.App.1996). *Joyner v. State,* 882 S.W.2d 59 (Tex.App.—Houston [14th Dist.] 1994)(failure to give § 5 information does not render guilty plea involuntary), *aff'd,* 921 S.W.2d 234 (1996). By specifying that the § 5 information be given after a defendant is placed on probation, the amendments suggest that the information is not a precondition for a guilty plea and cannot, therefore, render a guilty plea involuntary. But, the amendments also appear to recognize the desirability of allowing relief if a defendant can show that he was harmed by the trial judge's failure to provide the information.

Given the ambiguity in the legislative history, we shall also investigate the object sought to be obtained by the informational requirement and the consequences of a particular construction of the statutory provision in question. From the language of the statute, the circumstances under which the provision was enacted, the legislative history, and subsequent revision of the statutory language, we can determine that the Legislature believed the § 5 information was important, and that, if a defendant were harmed by the failure to receive the information, then some form of relief would be appropriate. The question remains whether that relief includes overturning a guilty plea as involuntary.

To help answer that question, we look to the consequences of various constructions of

the statute. At least three competing constructions are apparent: (1) construing the mere failure to give the § 5 information as rendering a guilty plea involuntary without requiring a showing of harm; (2) construing the failure to give the § 5 information as rendering a guilty plea involuntary under some circumstances if the appropriate kind of harm is shown; and (3) construing the failure to give the § 5 information as never rendering a guilty plea involuntary. We reject alternatives (1) and (3) because such constructions would achieve results sharply at variance with the apparent legislative purpose. This conclusion is supported by an examination of the consequences of those constructions in both an open plea and a negotiated plea context.

In an open plea, the defendant has a clear remedy for a failure to receive the required information. He can argue that the judge's failure to provide the information deprived the defendant of the ability to decide intelligently whether to move for final adjudication within thirty days. If the defendant can prove that: (1) he did not know the information; (2) he would have moved for final adjudication had he known the information; and (3) he was harmed by the failure to move for final adjudication, then he would be entitled to a new punishment hearing under Article 44.29(b) along with appropriate instructions designed to cure the harm suffered.[6] The defendant's guilty plea would not bar him from appealing this type of error because it would be an error occurring after the entry of the plea, and therefore, would be exempt from the *Helms* rule. *Jack v. State,* 871 S.W.2d 741 (Tex.Crim.App.1994).

By contrast, apart from a challenge to the voluntariness of the plea, a plea-bargaining defendant has no avenue for relief. Under Texas Rule of Appellate Procedure 40(b)(1), a plea-bargaining defendant is barred from appealing nonjurisdictional errors occurring before and after entry of his plea unless: (1) the trial court gives permission to appeal; or (2) the matter to be appealed was raised by written motion and ruled on before trial. Rule 40(b)(1); *Lyon v. State,* 872 S.W.2d 732 (Tex.Crim.App.), *cert. denied,* 512 U.S. 1209, 114 S.Ct. 2684, 129 L.Ed.2d 816 (1994).[7] A defendant who bargains for deferred adjudication is considered a plea-bargaining defendant under Rule 40(b)(1) regardless of the amount of punishment assessed upon adjudication. *Watson v. State,* 924 S.W.2d 711 (Tex.Crim.App.1996). A defendant who receives deferred adjudication as part of a negotiated plea cannot appeal a deprivation of his ability to decide whether to move for final adjudication because such an error would be a nonjurisdictional defect occurring after entry of the plea.

While a defendant could appeal such an error under Rule 40(b)(1) if the trial court gave permission to appeal, whether a trial court would actually give permission to appeal in any given case is speculative. If, however, the failure to impart § 5 information related to the voluntariness of a guilty plea, then a defendant could raise the claim on appeal regardless of the dictates of Rule 40(b)(1). *Flowers v. State,* 935 S.W.2d 131 (Tex.Crim.App.1996).

We have already held in *Ray* that a trial judge's failure to give the § 5 information in an open plea setting does not affect the voluntariness of the plea. As explained above, the open plea defendant has a remedy if he can show that he was harmed. The statutory language, the legislative history, the nature of the open plea itself, and the availability of an alternate remedy all indicate that the Legislature did not intend to

**6.** An example of an appropriate instruction, by way of illustration only, would be for the appellate court to require the trial court to exclude from evidence during the punishment hearing any events occurring after the defendant's right to move for final adjudication expired.

**7.** Rule 40(b)(1) states in relevant part:
... but if the judgment was rendered upon his plea of guilty or nolo contendere pursuant to Article 1.15, Code of Criminal Procedure, and the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney, in order to prosecute an appeal for a nonjurisdictional defect or error that occurred prior to entry of the plea the notice shall state that the trial court granted permission to appeal or shall specify that those matters were raised by written motion and ruled on before trial.

create an involuntariness claim in an open plea situation.

■ The statutory language does not distinguish between plea bargains and open pleas. But it seems unlikely that the Legislature intended to deprive the plea-bargaining defendant of a remedy for failing to receive the required information when the Legislature provided a remedy to open plea defendants. While one may rationally conclude that a plea-bargaining defendant has given up some rights that an open plea defendant would retain, the right to receive information concerning the consequences of deferred adjudication would not appear to fall in that category. Any unfairness to the defendant that inheres in failing to give the information would appear to be even greater in a plea bargain situation than in an open plea. While the consequences to an open plea defendant involve, at most, punishment considerations, the consequences to a plea-bargaining defendant involve his decision to plead guilty. Because deferred adjudication was a part of the plea agreement, rejecting deferred adjudication as a punishment option seriously undermines the basis upon which the plea was made. To hold that the failure to give the § 5 information could *never* produce an involuntary plea would result in foreclosing any realistic avenue for relief to defendants who bargain for deferred adjudication. We do not believe the legislature intended such a result, and therefore, we hold that a defendant who receives deferred adjudication as part of a plea agreement may raise an involuntariness claim based upon the trial judge's failure to give the required information.

The final question, however, is whether the failure to give the information in a plea bargain situation results in reversal without regard to harm. We hold that it does not. Article 26.13 occupies a unique position in that it was specifically intended to ensure that pleas of guilty were knowingly and voluntarily entered. *Ex Parte Tovar*, 901 S.W.2d 484, 486 (Tex.Crim.App.1995). We

have reasoned that, when an Article 26.13 admonishment is not given, the danger of entering an unknowing and involuntary plea is so great that a defendant need not show specific harm on direct appeal. *See Ex Parte McAtee*, 599 S.W.2d 335 (Tex.Crim.App. 1980), *overruled in part by, Ex Parte Tovar*, 901 S.W.2d 484, 486 n. 2 (Tex.Crim.App. 1995). With regard to the deferred adjudication information, we believe the Legislature's purpose was to permit the defendant to reject deferred adjudication as a punishment option rather than as a safeguard to ensure the voluntariness of a plea. In a plea bargain situation, rejecting deferred adjudication as a punishment option may necessarily require undoing the plea itself, but that does not mean that the Legislature believed the dangers of an involuntary plea to be so great as to require reversal without a showing of harm. We have held that misinformation concerning a matter, such as probation, about which a defendant is not constitutionally or statutory entitled to be informed, may render a guilty plea involuntary if the defendant shows that his guilty plea was actually induced by the misinformation. *Harrison v. State*, 688 S.W.2d 497, 499–500 (Tex.Crim. App.1985). Likewise, where the defendant complains about the trial court's failure to give certain information that is statutorily but not constitutionally required—and is not specifically intended as a vehicle to ensure that constitutionally required warnings are given—similar considerations should apply: a defendant should be required to show that he would not have entered his plea had he been given the required information.[8]

Obviously, to show that he would not have entered his plea, the defendant would have to prove that he did not know the information that § 5 requires the trial judge to convey. He would then have to show that he would not have entered his plea had he known the information. Moreover, since a defendant may appeal the imposition of deferred adjudication, Article 44.01(j) and *Watson*, 924 S.W.2d at 713–714, a defendant's failure to do so after being timely given (within the proper

---

8. This conclusion applies equally to the current version of the statute: a defendant who bargains for deferred adjudication under the current scheme may advance a claim that the failure to

give the § 5 information renders his guilty plea involuntary if he shows that he would not have entered the plea had he been given the information beforehand.

time periods to perfect appeal) the § 5 information would constitute some evidence that the information *would not have affected* the defendant's decision to enter his plea.

In the present case, appellant alleges merely that the § 5 information was not given. He does not contend that the record shows that he would not have entered his plea had he been given the information. As such, he has failed to meet the requirements of an involuntariness claim under Article 42.12 § 5.

The judgments of the courts below are AFFIRMED.

OVERSTREET, J. concurs in the result.