NO. 07-00-0523-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 4, 2002

_____


MARJORIE MONROE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE COUNTY COURT AT LAW NO. 2 OF POTTER COUNTY;

NO. 87,239-2; HONORABLE PAMELA C. SIRMON, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Appellant Marjorie Monroe appeals from her conviction for failure to report possible child abuse. She asserts via three issues that the statutes under which she was convicted are unconstitutionally vague and that the evidence was legally and factually insufficient for conviction. We affirm.

## I. BACKGROUND

In July, 1999, appellant, her husband Keith Monroe, and appellant's four children were living together in Potter County. Keith was the biological father of the youngest of appellant's children. The older three children were by her former husband, Tony Ritter.

In July, 1999, appellant worked at night and Keith worked during the day. Appellant generally returned home from work shortly after 7:00 a.m. Keith stayed at home with the children at night while appellant worked. Keith then would leave to go to his job shortly after appellant returned home in the morning.

During the summer of 1999, Keith sexually abused MBR, appellant's daughter by her marriage to Tony. The abuse took place on occasions when appellant was not at home. During the course of the sexual abuse Keith threatened MBR with various dire consequences such as death if she told anyone of the abusive activities.

During the latter part of July, 1999, Keith became concerned that MBR was going to report the sexual abuse to appellant. Keith, therefore, talked to appellant early one Monday morning when appellant returned from work, and reported to her that he and MBR had been involved in a "confrontation" during the prior Sunday evening. Keith did not specify that the "confrontation" involved sexual abuse. Keith testified during appellant's criminal trial that when appellant asked him about what happened between MBR and him,

he denied sexual contact with MBR. His denials to appellant lasted until the summer of 2000, when he finally admitted to appellant that he had sexually abused MBR.

In late July, 1999, MBR related to her father, Tony, some of the activities that Keith had engaged her in. MBR testified at trial that after telling her father of Keith's activities, she told appellant of the activities on at least two different occasions during July.

The Texas Department of Protective and Regulatory Service ("CPS") had an "open" case on the Monroe family during the relevant time frame. The children had been involved in counseling, but missed some scheduled counseling sessions during the summer. On Friday, July 30, 1999, CPS caseworkers visited the Monroe home on a regularly-scheduled visit. The caseworkers talked to appellant about the family situation in general, counseling appointments which the children had missed, medical condition of the children, and visitation of the three older children with their father, Tony. The CPS visit did not go well. Appellant ordered the caseworkers to leave her house. The caseworkers did so, but returned shortly with an Amarillo police officer. During the return visit by the caseworkers, Tony's parents (the Ritters) arrived to pick up the three older children for scheduled weekend visitation. At that time the Ritters told one of the CPS caseworkers, Jacquette Mendez, that MBR had made an outcry to her father, Tony, about Keith having had sexual contact with her. Mendez testified that the report by the Ritters was the first time CPS had knowledge of allegations that Keith had abused MBR.

CPS followed up on the report from the Ritters. The CPS investigation resulted in the children being removed from appellant's home and appellant being charged with failing to report the alleged sexual abuse of MBR.

Appellant pled not guilty. A jury convicted her and assessed punishment at a fine of $2,000 and recommended that she be granted community supervision for two years, which the court granted.

Appellant urges by three issues that her conviction should be reversed. Her first issue asserts that the statute under which she was prosecuted is so vague that it violates her rights to due process under the Fourteenth Amendment to the United States Constitution and under the due course of law provision of Article 1, § 19 of the Texas Constitution. Her second issue presents the claim that the State's evidence is legally insufficient for conviction. Her third issue urges factual insufficiency of the evidence. We will address the issues in the order presented.

## II. ISSUE ONE: DUE PROCESS OF LAW

The charge against appellant was "...having cause to believe that the physical health, mental health, and welfare of [MBR], a child under the age of 17, had been adversely affected by sexual abuse, [appellant] knowingly failed to report such abuse in accordance with Chapter 261 of the Texas Family Code." Appellant claims that the language "having cause to believe" is not defined and is, therefore, so vague as to deprive her of due process of law. She claims that her complaint was presented to the trial court

4

by a Motion to Quash which was overruled. Appellant does not differentiate between her claims under the federal constitution and the Texas Constitution. Because appellant does not argue that the Texas Constitution provides more protection to her than does the United States Constitution, we will not address her state constitution claim separately. See Brown v. State, 943 S.W.2d 35, 36 n.3 (Tex.Crim.App. 1997).

The State does not question whether appellant has preserved error as to the issue. See Cartier v. State, 2001 WL 454532, *2-3 (Tex.App.--Amarillo 2001, pet. ref'd). Rather, the State asserts that the issue has been foreclosed by the decision of Morris v. State, 833 S.W.2d 624 (Tex.App.–Houston [14th Dist.] 1992, pet. ref'd), *cert. denied,* 507 U.S. 961 (1993). We agree with the State that Morris is determinative of appellant's first issue.

The appellant in Morris was charged with a misdemeanor under former Section 34.07 of the Texas Family Code.[1] That section made it a misdemeanor to knowingly fail to make a report required by Family Code § 34.01. Family Code § 34.01 provided that "A person having cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse or neglect by any person shall report in accordance with Section 34.02 of the Texas Family Code." Appellant Morris urged that Family Code §§ 34.01, 34.02, (which specified procedures for making the reports prescribed by Section 34.01), and 34.07 were unconstitutionally vague, both facially and as applied to her, and thus violated her rights to due process of law. The appellate court held that the statutes

---

[1]TEX. FAM. CODE ANN. (Vernon 1986 & Supp. 1992). Further reference to the Family Code will be by reference to "Family Code § _____."

gave fair notice to a person of ordinary intelligence that the person was required to file a report with one of the appropriate agencies when the person had cause to believe that a child was being abused. As applied to Morris, the court held the facts showed that she had cause to believe that the child involved was being subjected to abuse.

As to the matter before us, the facially-vague question is directly addressed, and foreclosed, by Morris. The language challenged by appellant is not so vague that it facially violates due process requirements. See Morris, 833 S.W.2d at 627.

As applied to appellant and her conduct, we note that MBR testified that she reported multiple specific acts of sexual abuse by Keith to appellant on more than one occasion, but that appellant said MBR was making up the stories. Keith testified that he told appellant of a confrontation with MBR, then when he returned from work that evening, appellant told him to leave the house and go live with his parents "until she found out more." Appellant at that time told Keith that his story was similar to what MBR told her in some ways, but very different in other ways. Those events took place on the Monday before the CPS visit on Friday, July 30th.

Edwin Basham, a psychologist who consulted with appellant in August, 1999, testified that appellant told him that before the CPS workers visited on July 30th, appellant received reports from a babysitter that MBR claimed Keith "humped" her, and that appellant questioned MBR and Keith about the matter. Appellant related to the psychologist that both MBR and Keith denied any improper actions took place, but that

6

shortly after the babysitter's report, MBR returned from a visit to the Ritters and made expanded allegations of sexual contact by Keith. According to Basham, appellant told him that the reports by MBR to appellant and discussions between appellant, MBR and Keith took place before the CPS visit of July 30th.

The evidence in this case gave appellant "cause to believe" that MBR, a ten-year-old child had been adversely affected by sexual abuse. The statute as applied to the specific facts involved in appellant's case is not so vague as to violate her rights to due process. See Morris, 833 S.W.2d at 627. Appellant's first issue is overruled.

## III. ISSUE TWO: LEGAL SUFFICIENCY
## OF THE EVIDENCE

By her second issue, appellant asserts that the evidence is legally insufficient to prove that she did not notify at least one of the governmental entities specified by Family Code § 261.103 of the fact that MBR may have been abused. She does not challenge the jury charge which specified that the statute required a person having cause to believe that abuse may have occurred to make a report to (1) any local or state law enforcement agency; (2) the department if the alleged or suspected abuse involves a person responsible for the care, custody, or welfare of the child; (3) the state agency that operates, licenses, certifies or registers the facility in which the alleged abuse or neglect occurred; or (4) the agency designated by the court to be responsible for the protection of the child. See Family Code § 261.103(a). She posits particularly that there is no evidence

7

that appellant did not make a report to some local or state law enforcement agency as set out in subsection 1.

The State responds that it was not required to disprove a report by appellant to any of the specific entities specified by statute. The State asserts that the entities specified in the statute to which reports can be made are not elements of the offense, and that in any event, the record contains both direct and circumstantial evidence sufficient to support a finding that appellant did not report the possible abuse to any agency. The State again cites Morris as authority.

When reviewing challenges to both the legal sufficiency and the factual sufficiency of the evidence to support the verdict, we first review the legal sufficiency challenge. Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). The evidence is legally sufficient if, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Clewis, 922 S.W.2d at 132. All the evidence is reviewed, but evidence that does not support the verdict is disregarded. See, e.g., Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).

There was evidence before the jury that MBR told appellant specifically and graphically of being sexually molested multiple times by Keith, and that appellant responded, in effect, that she did not believe MBR. Testimony from Basham was that appellant related to him a series of events evidencing that she had notice via a babysitter

8

that Keith was possibly acting inappropriately toward MBR. Keith testified that he told appellant before he and appellant were married that he had been accused of sexually molesting his three-year-old daughter from a prior marriage, but that the charges had been dismissed.

Psychologist Basham's testimony did not evidence that appellant reported to any agency that Keith may have molested or abused MBR. Keith's testimony did not evidence a report to any agency by appellant that Keith may have molested MBR, even though his testimony established that appellant told him to move out of the home until she could find out more about what happened. The testimony of CPS worker Mendez did not evidence any report by appellant to CPS, nor any report to CPS by another agency that possible abuse had been reported to such other agency. MBR's testimony did not evidence any report to an agency by appellant. To the contrary, MBR testified that appellant's statements and attitude after MBR reported the abuse to her indicated that appellant did not believe MBR. Furthermore, after appellant was charged with the offense of failing to report, appellant took MBR to appellant's attorney's office for an interview. En route to the attorney's office, according to MBR's uncontradicted trial testimony, appellant discussed some of the facts and dates surrounding the events of the end of July, 1999. Appellant, however, did not discuss any reports she claimed to have made, although the basis of the trip to the attorney's office was the charge that appellant did not make a report as required by statute.

9

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have inferred from the evidence and found beyond a reasonable doubt that appellant did not report any of the events or reports she received about possible abuse of MBR to any agency. Accordingly, the evidence is legally sufficient to support the verdict. Appellant's second issue is overruled. See Jackson, 443 U.S. at 319, 99 S.Ct. at 2789; Clewis, 922 S.W.2d at 132.

## IV. ISSUE THREE: FACTUAL SUFFICIENCY
## OF THE EVIDENCE

If the evidence is legally sufficient to support the verdict, we then review the factual sufficiency challenge if one is properly raised. Clewis, 922 S.W.2d at 133. A factual sufficiency review of the evidence begins with the presumption that the evidence supporting the jury's verdict was legally sufficient under the Jackson test. Id. at 134. Factual sufficiency review is accomplished without viewing the evidence through the prism of "in the light most favorable to the prosecution," as the evidence is viewed in determining legal sufficiency. Id. The verdict may only be set aside for factual insufficiency if the entire record shows that (1) evidence supporting the jury's finding in favor of the party with the burden of proof is so weak as to be clearly wrong and manifestly unjust, or (2) the evidence supporting a finding adverse to the party with the burden of proof is so contrary to the great and overwhelming weight of the evidence as to be clearly wrong or unjust .

See Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000) (holding that Clewis is to be read as adopting the complete civil factual insufficiency formulation). Where enough evidence is before the factfinder that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the factfinder. See Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988).

Appellant points out significant credibility questions as to testimony by MBR, Basham and Keith Monroe. She also attacks the State's implication at trial that appellant manipulated, or attempted to manipulate, MBR's testimony when MBR had not lived in appellant's home from the end of July, 1999, until the time of trial in November, 2000. She attacks the State's charging her with the offense of failing to report when testimony indicated that she only had four days to investigate whether MBR had been abused by Keith, while the standard amount of time for CPS to investigate such an allegation is 30 days. She cites testimony that she was seemingly the only person protective of MBR during the relevant time period. Appellant concludes that the lack of evidence that she reported to some agency, as more fully set out in her issue two, and the evidence as a whole mandates a conclusion that the jury's finding is manifestly unjust and shocks the conscience.

As an appellate court, we defer to the jury's resolution of credibility issues. The jury was called upon to resolve significant conflicts in evidence and credibility questions. The evidence supporting the jury's verdict is not so weak as to render the verdict clearly wrong

11

and manifestly unjust.  See Johnson, 23 S.W.3d at 11.  The evidence, therefore, is not factually insufficient to support the verdict.  Appellant's third issue is overruled.

## V.  CONCLUSION

Having overruled appellant's three issues, we affirm the judgment of the trial court.


Phil Johnson
Justice

Do not publish.