IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0093-04






BOBBY DOYLE GETTS, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TWELFTH COURT OF APPEALS


HENDERSON COUNTY





 Cochran, J., filed a dissenting opinion in which Keller, P.J. and
Meyers, J., joined.


O P I N I O N 


 

 I respectfully dissent. "Our constitutional duty, of course, is to effectuate what the
Legislature intended when it enacted the statute." (1) It is beyond peradventure that the Texas
Legislature did not intend to enact any dramatic substantive changes to the felony DWI 
enhancement statute in its 2001 amendment. The infelicitous language found in the 
amendment to section 49.09(e) of the Texas Penal Code is a drafting mistake and the result
of a last-minute floor amendment which promised "no substantive change" in the law. The
Texas Legislature can, and probably will, quickly repair its drafting error, but I think that we
ought not apply a rigid "plain language" interpretation to statutory language that we know 
was not intended by the Legislature, created a statutory ambiguity, and is nothing more than
a technical error. 

 In this case, the two jurisdictional enhancement paragraphs alleged prior DWI
convictions in 1984 and 1997. The trial court overruled appellant's motions to dismiss or
quash the indictment which asserted that the 1984 conviction was too remote to use because
it occurred more than ten years before the present offense. The Twelfth Court of Appeals
reversed, holding that the 2001 amendments to Section 49.09(e) limited the use of prior DWI
convictions for enhancement purposes to those which occur within ten years of each other. (2) 
 We granted review to determine whether the court of appeals correctly interpreted the
2001 amendment. (3) Because I find that the plain language of amended section 49.09(e) is
ambiguous, I would apply the usual statutory construction aids. I conclude that the relevant
ten-year period is the time between the commission of the present or primary offense and the
date of the defendant's discharge from probation, parole, or incarceration for the most recent
prior DWI. Therefore, I would reverse the court of appeals and affirm the judgment of the
trial court. 

I.


 On May 23, 2002, appellant, Bobby Doyle Getts, was indicted for felony DWI. The
indictment alleged that he had two prior convictions for DWI: one conviction on April 26,
1984, and another on September 11, 1997. Appellant filed motions to dismiss and to quash
the indictment, arguing that the 1984 conviction could not be used for enhancement of the
present DWI because it occurred outside the ten-year window set out in amended section
49.09(e). After the trial court denied the motions, appellant pleaded guilty to felony DWI
and was sentenced to three years in prison. 

 The court of appeals reversed appellant's conviction after concluding that the use of
the 1984 DWI conviction to enhance the present offense from a misdemeanor to a felony was
improper. (4) The court of appeals concluded that the 2001 amendment to section 49.09(e)
limits the use of prior DWIs for enhancement purposes by changing the relevant ten-year
remoteness period from the former "ten years from the most recent prior offense to the date
of the present offense" to "ten years between the most recent prior conviction and the date
of the earlier prior conviction." (5) Because there was a greater than ten-year gap between
appellant's most recent prior conviction in 1997 and his earlier prior conviction in 1984, the
court of appeals reversed the trial court's judgment, ordered that the judgment be reformed
to reflect a conviction for a class B misdemeanor, and remanded the case for a new
punishment hearing. (6) 

II. 

 This case presents an issue of statutory interpretation of the Texas Legislature's 2001
amendment to the ten-year remoteness rule for felony DWI enhancement. Under our
traditional rules of statutory interpretation, we must look to the plain meaning of the language
used. (7) When the statutory language is "clear and unambiguous, the Legislature must be
understood to mean what it has expressed, and it is not for the courts to add or subtract from
such a statute." (8) However, when the plain language is ambiguous or its straightforward
application would lead to absurd results, courts may consider extra-textual factors to arrive
at a sensible interpretation. (9) Our overriding goal is to carry out the legislative intent of the
law. (10)

A. Historical Overview of DWI Enhancements 

 Although DWI is normally a misdemeanor offense, when a person has two prior DWI
convictions, the third DWI charge may be elevated to a felony. (11) The public policy rationales
for increased penalties for repeat DWI offenders include:

 (1) repeat offenders should be punished more severely for repeatedly
endangering the public welfare; (2) harsher penalties for repeat offenders
function as a deterrent, discouraging the offender and others from drinking and
driving; and (3) the jail sentence for repeat offenders ... reflects the need to
physically remove drunk drivers from public streets for a period of time, both
as punishment for them and as protection for the rest of society. (12)


 Historically, Texas law provided that any one prior driving while intoxicated
conviction, no matter how remote, (13) could enhance a misdemeanor DWI offense to a felony. (14)
In 1983, that requirement was increased to two prior DWI convictions. (15) Then, in 1993, the
Legislature limited the elevation of a DWI to a felony only when the defendant had two prior
DWI convictions, one of which had been committed within the ten-year period before the
commission of the present offense. (16) Under the 1993 law, the ten-year remoteness clock
began ticking backwards from the date of the present offense to the date the person
committed his most recent prior DWI. (17) 

B. The 2001 Amendments to the DWI Enhancement Statute

 In 2001, the Legislature made changes to three provisions within section 49.09. First,
any prior intoxication manslaughter conviction, regardless of whether it involved the use of
a car, airplane, or boat, can be used to elevate a misdemeanor DWI to a felony DWI
offense. (18) Second, any intoxication manslaughter conviction, no matter how remote, can be
used to enhance the present DWI offense. (19) Third, the Legislature amended Section 49.09(e),
the provision we are now charged with interpreting, to "modif[y] the ten-year time period to
begin after the individual's sentence is completely discharged." (20) The first two amendments
broaden the enhancement provisions considerably by allowing for the use of any prior
intoxication manslaughter convictions for enhancement, regardless of type or remoteness. 
At issue in this case is whether the Legislature's change to section 49.09(e) broadened or
drastically restricted the use of prior DWI convictions when there are two prior convictions
rather than simply one. 

C. The Boykin Plain Language Analysis

 In interpreting a statute under Boykin, we look first to the plain language used. (21) 
Amended section 49.09(e) states that a prior DWI conviction may not be used for
enhancement if:


 the conviction was a final conviction under Subsection (d);
 the offense for which the person is being tried was committed more than 10 years
after the latest of 



 
 the date on which the judgment was entered for the previous conviction;
 the date on which the person was discharged from any period of community
supervision on which the person was placed for the previous conviction;
 



 
 the date on which the person successfully completed any period of parole on
which the person was released after serving a portion of the term to which the
person was sentenced for the previous conviction; or
 the date on which the person completed serving any term for which the person
was confined or imprisoned for the previous conviction; and

 



 the person has not been convicted of any offense ... related to operating a motor
vehicle while intoxicated within 10 years of the latest date under Subdivision (2).



Under Subsections (A)-(D), the Legislature unambiguously changed the time at which the
prior conviction clock begins ticking. Formerly, it had been the date of the commission of
the offense. Now, it is a much later date-whichever date is the latest of the date of judgment,
termination of community supervision or parole, or release from jail or prison. That change
clearly broadens the use of a single prior conviction because it moves forward-closer to the
time of the present offense-the ten-year window. (22) 

 The difficulty in interpreting Subsection (e) is deciding how it applies when the
defendant has two prior DWI convictions. Does the clock run backward (as it did under prior
law and as it does for a single prior conviction) to the date that the most recent prior
conviction sentence expires and, if that conviction is not remote, revitalize any other earlier
conviction? Or does the clock, for purposes of two prior DWI convictions, now run forward
to measure only the ten-year interval between the first and second prior conviction?

 The court of appeals said that the clock now runs forward from the earliest prior
conviction. It reasoned:

 Appellant's 1984 conviction for DWI meets each of the requirements for
remoteness because 1) the conviction was a final conviction, 2) the 2002 DWI
offense was committed more than ten years after the 1984 date of conviction
for DWI, and 3) the 1997 DWI conviction did not occur within ten years of the
1984 conviction. (23)


Several other courts of appeals have followed the reasoning of the Tyler Court of Appeals. 
They have stated that, under the pre-2001 amendments, "the proper approach was to 'look
back' ten years from the date of the primary DWI offense to determine whether an
intervening DWI conviction had occurred since the remote conviction." (24) After the 2001
amendments, however, these courts reason that they are required to "look forward" from the
earliest of the prior convictions to see if there is an intervening conviction within ten years
of that earliest conviction. (25) Viewed in a vacuum, this is a reasonable reading of the literal
words of the statute.

 However, I think that the plain language of this statute is ambiguous under Boykin
because there are at least three other reasonable interpretations of the plain language in the
amended statute. (26) First, as suggested during oral argument on this case, the statute could 
be read to mean that the two prior DWIs both had to be within ten years of the present
offense before they could be used for felony enhancement purposes. (27) Second, the amended
statute could be read to require "chaining" of prior convictions-the sentence on each prior
DWI conviction used to enhance must have been completed within ten years of the next one. 
Third, as Professors Dix and Dawson read the amended statute, it could mean that "if the
State proves two prior DWI convictions and the date of either conviction is not more than ten
years before the commission of the primary offense," the State may elevate the offense to a
felony. (28) 


D. Extra-textual Considerations and Legislative Intent

 Because each one of these four "plain language" interpretations is plausible, I believe 
that the statute is ambiguous under Boykin. (29) Therefore, I would look to extra-textual
considerations to determine the intent of the Legislature. (30) The Code Construction Act,
which provides the tools for interpretation when the plain language of a law is ambiguous, (31)
states that, in construing a statute, a court may consider the 

(1) object sought to be attained; 

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar
subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and 

(7) title (caption), preamble, and emergency provisions. (32)


I would apply the first two factors-the object to be attained and the circumstances under
which the statute was enacted-together because of their similarity in this instance. The 2001
Legislature's first two amendments to Section 49.09 show the expansion of offenses (any and
all prior intoxication manslaughter convictions regardless of remoteness) and the broadening
of the time-window triggering the enhancement of the charged DWI offense (increasing it
from the date of the commission of the prior offense to the latest date for which any sentence
would affect the defendant). Additionally, the circumstances under which the 2001
amendments were enacted further support the legislative intent to broaden the scope of
eligible offenses used for enhancement purposes. The Bill Analysis of HB 314 clarifies the
background and purpose of the 2001 amendments in stating: 

Under current law, if an individual is convicted of a third DWI within ten years
of the date the previous offense was committed the offense is increased to a
third degree felony offense. However, the ten-year period begins with the
individual's incarceration and could be partially or completely executed during
the individual's confinement. House Bill 314 modifies the ten-year time
period to begin after the individual's sentence is completely discharged and
authorizes a previous conviction of intoxication manslaughter to be used for
the purposes of enhancement regardless of when the conviction occurred. (33) 


Thus, the amendment's stated purpose was to broaden the scope of DWI convictions that
could be used for enhancement purposes. 

 Further, the legislative history of the 2001 amendment also reflects a broadening
purpose. The original version of HB 2250 (the bill that eventually created the amendment
to 49.09(e)) addressed only intoxication manslaughter. (34) However, HB 2250 was amended
by the addition of language from HB 314, discussed above, which modified the ten-year rule
and was the basis for the present version of 49.09(e). (35) The current language-interpretation
dilemma was created by a floor amendment to HB 2250 by Senator Moncrief. Senator
Moncrief's introduction of HB 2250 stated that the proposed amendment was a way of
closing loop-holes in the previous DWI enhancement statute. He explained:

Members, this bill closes some of the loop-holes in the DWI statutes, to ensure
that repeat DWI offenders face appropriate charges. It provides that a person
convicted of intoxication manslaughter - that is, someone who kills someone
driving drunk - that any subsequent DWI would be a felony. It also states
DWI penalty enhancements apply for up to ten years after the completion of
the sentence for previous convictions. (36) 

 

In further explaining the purpose of the floor amendment to HB 2250, Senator Moncrief
stated:

Mr. President, this is merely a Legislative Council clean-up amendment of
language that was added on the House floor. The House added new language
without removing the old statute, and this [current floor amendment] removes
duplicative language to avoid confusion within the statute. It makes no
substantive change to the bill. (37)


Senator Moncrief's floor amendment indicates that the amendment did not make any
substantive changes to HB 2250, but rather, made the language in subsection(e)(3) congruent
with the changes made to subsection (e)(2). Under this change, subsections (e)(2) and (e)(3)
provide that the relevant time period is that looking backward from the commission of the
present offense to the latest date under the revised Subsection(e)(2) (i.e., the date of the
conviction, or the date of the release from probation, parole, or confinement) of the most
recent prior conviction. Thus, the legislative history indicates that the 2001 amendment was
not intended to radically limit the scope of eligible prior DWIs used for enhancement
purposes, but rather to broaden that scope.

 There is no indication from any source that the Legislature intended the type of radical
revision and limitation of the DWI felony enhancement statute that would occur under the
interpretation given by the majority, the court of appeals, or by the first two alternate "plain
language" possibilities-both prior DWIs within the single ten-year window before the
commission of the charged offense or "chaining" of DWIs with each prior within ten years
of the one before it. The interpretation given by the majority and court of appeals in this case
has an additional deleterious effect: it unduly emphasizes the sins of one's youth without
regard for more recent reformation because two very remote DWIs would permit
enhancement to a felony as long as both of those prior DWI convictions occurred within a
ten-year window. (38)

 I cannot agree that the majority's interpretation accords with the legislative intent or
with the other two simultaneous amendments to section 49.09 which significantly broaden
the use of intoxication manslaughter convictions to enhance a DWI offense to a felony. I
think that the legislature intended to broaden, not drastically limit, the use of prior DWI
convictions for enhancement purposes. (39)

 Furthermore, under the literal "plain meaning" of the words, no conviction obtained
before September 1, 1994, is barred for enhancement purposes under the statute. As the State
aptly points out, under section 49.09(e)(1), the ten-year rule prohibits the use of a prior DWI
only if "the conviction was a final conviction under Subsection (d)." (40) Subsection (d),
however, refers only to convictions occurring on or after September 1, 1994. (41) Therefore,
under a purely technical application of the "plain meaning" rule, no conviction-regardless
of how remote-obtained before that date is barred from use under subsection (e). Now, of
course, that is not at all what the legislature intended. The clear intent of subsection (d) is
to include within the definition of "final conviction" any conviction obtained after September
1, 1994, whose sentence was probated as well as those in which the sentence was "imposed."
But that is not what the literal words of the statute say. If we are to adhere to the "plain
meaning" of the literal words in one subsection of article 49.09, we should, for the sake of
consistency, adhere to the technical "plain meaning" in the other pertinent subsection of
article 49.09. But in neither subsection would strict application of the literal words of the
statute be a reasonable interpretation of the law or one that is in accord with legislative intent.

 In sum, I would find that the most reasonable interpretation of the 2001 amendments
is that of Professors Dix and Dawson. That interpretation is also most faithful to the
legislative intent and history. Although the language of the 2001 amendment to the statute
is infelicitous, I believe that the relevant ten-year period under section 49.09(e) is the time
from the commission of the present DWI offense backwards to the date on which the
defendant was discharged from probation, parole, or confinement for the most recent prior
offense. If that conviction was discharged within ten years of the present offense, it
revitalizes any other earlier DWI conviction-regardless of the date it was committed-for
enhancement purposes.

 I would reverse the decision by the court of appeals and affirm the judgment of the
trial court.

Cochran, J.

Filed: January 26, 2005

Published
1. Kutzner v. State, 75 S.W.3d 427, 433 (Tex. Crim. App. 2002); Boykin v. State, 818
S.W.2d 782, 785 (Tex. Crim. App. 1991) (beginning its discussion of statutory interpretation
with this statement: "[w]hen we interpret statutes ... we seek to effectuate the 'collective' intent
or purpose of the legislators who enacted the legislation. We do so because our state constitution
assigns the lawmaking function to the Legislature while assigning the law interpreting function
to the Judiciary") (citations omitted, emphasis in original).
2. 
 [2] Getts v. State, ___ S.W.3d ___ 2003 Tex. App. LEXIS 9237 (Tex. App.-Tyler, Oct 29,
2003) (No. 12-03-00047-CR), reh'g overrruled by 2003 Tex. App. LEXIS 10546 (Tex. App. - Tyler,
Dec. 16, 2003) (not designated for publication).
3. [3] We granted the State Prosecuting Attorney's sole question for review: 

Did the Court of Appeals correctly interpret the 2001 amendment to Penal Code § 49.09(e)
such that the relevant ten-year period for an intervening conviction is now the period between
the two prior DWI's rather than the ten-year period before the date of the primary offense?
4. Getts, 2003 Tex. App. LEXIS 9237 at *3.
5. See id. at * 5. The two set-off parallel phrases are not direct quotations from the court
of appeals' opinion, but rather my rephrasing of language used by the court of appeals.
6. Id. at * 8.
7. See Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991); see also Badgett v.
State, 42 S.W.3d 136, 138 (Tex. Crim. App. 2001). 
8. Boykin, 818 S.W.2d. at 785 (citations omitted).
9. 
 [9] Id. at 785-86. The appropriate extra-textual factors to consider are set out in Tex.
Gov't Code § 311.023.
10. Kutzner v. State, 75 S.W.3d 427, 433 (Tex. Crim. App. 2002).
11. Tex. Pen Code § 49.09 et. seq.; see also Weaver v. State, 87 S.W.3d 557, 560 (Tex.
Crim. App. 2002), cert. denied, 538 U.S. 911 (2003). 
12. Guinn v. State, 696 S.W.2d 436, 438 (Tex. App. - Houston [14th Dist.] 1985, pet.
ref'd).
13. Joles v. State, 563 S.W.2d 619, 622 (Tex. Crim. App. 1978).
14. See Rawlings v. State, 602 S.W.2d 268, 270 (Tex. Crim. App. 1980) (setting out
enhancement provisions of art. 6701l-2, V.A.C.S. (subsequent offense driving while
intoxicated)); Edwards v. State, 166 Tex. Crim. 301, 302, 313 S.W.2d 618, 619 (1958) (setting
out enhancement provisions of art. 802(b) V.A.P.C. (subsequent offense driving while
intoxicated)).
15. See Guinn, 696 S.W.2d at 437 (noting that the 1983 law "is more lenient than the prior
DWI statute in that the prior law required elevation of a DWI offense to felony status after only
one prior offense rather than two") (emphasis in original). See Act of June 16, 1983, 68th Leg.,
R.S., ch. 303, § 3, 1983 Tex. Gen. Laws 1568, 1576 (former Tex. Rev. Civ. Stat. art. 6701l-1)
(art. 6701l-1(e) stated: "If it is shown on the trial of an offense under this article that the person
has previously been convicted two or more times of an offense under this article, the offense is
punishable by: (1) a fine of not less than $500 or more than $2,000; and (2) confinement in jail
for a term of not less than 30 days or more than two years or imprisonment in the state
penitentiary for a term of not less than 60 days or more than five years"). That provision was
repealed in 1993. See Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.15, 1993 Tex. Gen.
Law 3586, 3704. 
16. See Tex. Pen. Code § 49.09(e) (1993). The 1993 law recognized that people can
rehabilitate themselves and that, after sowing wild oats as a youth, they may become stable, solid
members of society. The legislative purpose of the limitation upon the DWI enhancement statute
has remained the same since 1993. See Bower v. State, 77 S.W.3d 514, 517 (Tex. App. -
Houston [1st Dist.] 2002, pet. ref'd) (noting that "[t]he obvious purpose of subsection (e) is to
prevent the State from sending a person to prison for the offense of DWI when that person has
not had any DWI convictions in the previous ten years").
17. The former version of Section 49.09(e) read:

 A conviction may not be used for purposes of enhancement under this section if:

 (1) the conviction was a final conviction under Subsection (d) and was for an offense
committed more than ten years before the offense for which the person is being tried
was committed; and 

 (2) the person has not been convicted of an offense under Section 49.04, 49.05, 49.06,
49.065, 49.07, or 49.08 or any offense related to operating a motor vehicle while
intoxicated committed within ten years before the date on which the offense for which
the person is being tried was committed. 

Tex. Pen. Code §49.09(e) (2000). 
18. See Tex. Pen. Code §49.09(f)(1) (2001). 
19. See Tex. Pen. Code §49.09(f)(2) (2001). 
20. House Comm. On Criminal Jurisprudence, Bill Analysis, Tex. H.B. 314, 77th
Leg., R.S. (2001). 
21. Boykin, 818 S.W.2d at 785.
22. Suppose, for example, that a defendant is charged with a DWI alleged to have occurred
on November 1, 2004. He has a prior conviction for a DWI which was committed on November
1, 1990. Under the pre-2001 amendment, that prior conviction is too remote to use as an
enhancement. But under the 2001 amendments, if the defendant was not sentenced for that 1990
DWI until November 10, 1992, and then served two years on community supervision which
terminated on November 9, 1994, that prior conviction can be used to enhance the present
offense.
23. Getts, 2003 Tex. App. LEXIS 9237 at * 5.
24. Uriega v. State, 136 S.W.3d 258, 260 (Tex. App. - San Antonio 2004, no pet.); see
also Howard v. State, 137 S.W.3d 282, 287-88 (Tex. App. - Fort Worth 2004, no pet.); 
Anderson v. State, 110 S.W.3d 98, 99 (Tex. App. - Dallas 2003, no pet.).
25. Uriega, 136 S.W.3d at 261 (stating that amended section 49.09(e) "prohibits the use of
a prior DWI conviction if the defendant committed the charged DWI more than ten years after
the judgment date of the prior DWI and if the defendant was not convicted of another
intoxication related offense within that ten-year period"); Anderson, 110 S.W.3d at 99.
26. See Boykin, 818 S.W.2d 782. 
27. Tr. Oral Argument (September 29, 2004). This interpretation had been accepted by one
court under the pre-2001 enhancement statute, see Renshaw v. State, 981 S.W.2d 464, 466 (Tex.
App. - Texarkana 1998, pet. ref'd), but the Texarkana court later stated that it erred in Renshaw.
See Smith v. State, 1 S.W.3d 261, 263 (Tex. App. - Texarkana 1999, pet. ref'd) (concluding that
"[t]he statute requires the State to prove only one prior D.W.I. conviction in the ten-year period
and one other prior D.W.I. conviction, not subject to the ten-year limiting period"); see also
Bower, 77 S.W.3d at 516-17 (holding that, under art. 49.09(e), only one of the prior convictions
must be within ten years of the present offense).
28. See 43 George W. Dix and Robert O. Dawson, Texas Practice: Criminal
Practice and Procedure § 38.128 at 204 (2004 Pocket Part). Professors Dix and Dawson
state:

 In 2001, the legislature totally changed the nature of the remoteness ban. 
Instead of measuring the time between the commission of the primary DWI
offense and the date of commission of the latest prior DWI, the amended
provision measures the time from the commission of the primary DWI offense to
the date the defendant was discharged from probation, parole or incarceration for
the newest of the prior offenses.

Id. As they further note, "[o]f course, this substantially extends the reach of the felony DWI
statute to include more offenses." Id.
29. Boykin, 818 S.W.2d at 785. 
30. [30] See id.; see also Ex parte Kuester, 21 S.W.3d 264, 268 (Tex. Crim. App. 2000).
31. See Brown v. State, 943 S.W.2d 35, 38 (Tex. Crim. App. 1997).
32. Tex. Gov't Code § 311.023.
33. House Comm. On Criminal Jurisprudence, Bill Analysis, Tex. H.B. 314, 77th
Leg., R.S. (2001). 
34. See House Research Organization, Tex. H.B. 2250, 77th Leg. (2001). 
35. House Comm. On Criminal Jurisprudence, Bill Analysis, Tex. H.B. 314, 77th
Leg., R.S. (2001). 
36. See http//www.senate.state.tx.us/ram/archive/May2001/052102Session_A.ram. May
21, 2001, Senate Session, Part 1. (emphasis added).
37. Id. (emphasis added).

38. As the State Prosecuting Attorney points out, under this interpretation, a teenager could
have two DWI convictions in the halcyon days of his youth, then lead an exemplary life for the
next forty years, and, celebrating his sixtieth birthday, commit a new offense. He could be
charged with a felony DWI. On the other hand, the town drunk who finishes each of his five
prior DWI sentences exactly eleven years apart, except for the most recent one which was just
two years before the present offense, could not be charged with a felony. 
39. The majority quotes the Supreme Court's recent statement that, "[i]f Congress enacted
into law something different from what it intended, then it should amend the statute to conform it
to its intent. It is beyond our province to rescue Congress from its drafting errors, and to provide
for what we might think ... is the preferred result." Lamie v. United States Tr., 540 U.S. 526, 542
(2004). But in Lamie, the Supreme Court had, in fact, looked to the conflicting and competing
legislative history as support for its application of a technical "plain meaning" interpretation of
the pertinent bankruptcy statute, in part because there was no clear and unambiguous legislative
intent. Id. ("[t]hese uncertainties illustrate the difficulty of relying on legislative history here and
the advantage of our determination to rest our holding on the statutory text") (emphasis added).
40. Tex. Penal Code § 49.09(e)(1).
41. Tex. Penal Code § 49.09(d) reads: "For the purpose of this section, a conviction for
an offense under Section 49.04, 49.05, 49.06, 49.065, 49.07, or 49.08 that occurs on or after
September 1, 1994, is a final conviction, whether the sentence for the conviction is imposed or
probated."