NO. 07-00-0523-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS


 

AT AMARILLO



PANEL A



JANUARY 4, 2002



______________________________




MARJORIE MONROE, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE COUNTY COURT AT LAW NO. 2 OF POTTER COUNTY;



NO. 87,239-2; HONORABLE PAMELA C. SIRMON, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Appellant Marjorie Monroe appeals from her conviction for failure to report possible
child abuse. She asserts via three issues that the statutes under which she was convicted
are unconstitutionally vague and that the evidence was legally and factually insufficient for
conviction. We affirm. 


I. BACKGROUND

 In July, 1999, appellant, her husband Keith Monroe, and appellant's four children
were living together in Potter County. Keith was the biological father of the youngest of
appellant's children. The older three children were by her former husband, Tony Ritter. 


 In July, 1999, appellant worked at night and Keith worked during the day. Appellant
generally returned home from work shortly after 7:00 a.m. Keith stayed at home with the
children at night while appellant worked. Keith then would leave to go to his job shortly
after appellant returned home in the morning. 

 During the summer of 1999, Keith sexually abused MBR, appellant's daughter by
her marriage to Tony. The abuse took place on occasions when appellant was not at
home. During the course of the sexual abuse Keith threatened MBR with various dire
consequences such as death if she told anyone of the abusive activities. 

 During the latter part of July, 1999, Keith became concerned that MBR was going
to report the sexual abuse to appellant. Keith, therefore, talked to appellant early one
Monday morning when appellant returned from work, and reported to her that he and MBR
had been involved in a "confrontation" during the prior Sunday evening. Keith did not
specify that the "confrontation" involved sexual abuse. Keith testified during appellant's
criminal trial that when appellant asked him about what happened between MBR and him,
he denied sexual contact with MBR. His denials to appellant lasted until the summer of
2000, when he finally admitted to appellant that he had sexually abused MBR. 

 In late July, 1999, MBR related to her father, Tony, some of the activities that Keith
had engaged her in. MBR testified at trial that after telling her father of Keith's activities,
she told appellant of the activities on at least two different occasions during July. 

 The Texas Department of Protective and Regulatory Service ("CPS") had an "open"
case on the Monroe family during the relevant time frame. The children had been involved
in counseling, but missed some scheduled counseling sessions during the summer. On
Friday, July 30, 1999, CPS caseworkers visited the Monroe home on a regularly-scheduled
visit. The caseworkers talked to appellant about the family situation in general, counseling
appointments which the children had missed, medical condition of the children, and
visitation of the three older children with their father, Tony. The CPS visit did not go well. 
Appellant ordered the caseworkers to leave her house. The caseworkers did so, but
returned shortly with an Amarillo police officer. During the return visit by the caseworkers,
Tony's parents (the Ritters) arrived to pick up the three older children for scheduled
weekend visitation. At that time the Ritters told one of the CPS caseworkers, Jacquette
Mendez, that MBR had made an outcry to her father, Tony, about Keith having had sexual
contact with her. Mendez testified that the report by the Ritters was the first time CPS had
knowledge of allegations that Keith had abused MBR. 

 CPS followed up on the report from the Ritters. The CPS investigation resulted in
the children being removed from appellant's home and appellant being charged with failing
to report the alleged sexual abuse of MBR. 

 Appellant pled not guilty. A jury convicted her and assessed punishment at a fine
of $2,000 and recommended that she be granted community supervision for two years,
which the court granted. 

 Appellant urges by three issues that her conviction should be reversed. Her first
issue asserts that the statute under which she was prosecuted is so vague that it violates
her rights to due process under the Fourteenth Amendment to the United States
Constitution and under the due course of law provision of Article 1, § 19 of the Texas
Constitution. Her second issue presents the claim that the State's evidence is legally
insufficient for conviction. Her third issue urges factual insufficiency of the evidence. We
will address the issues in the order presented. 

II. ISSUE ONE: DUE PROCESS OF LAW

 The charge against appellant was "...having cause to believe that the physical
health, mental health, and welfare of [MBR], a child under the age of 17, had been
adversely affected by sexual abuse, [appellant] knowingly failed to report such abuse in
accordance with Chapter 261 of the Texas Family Code." Appellant claims that the
language "having cause to believe" is not defined and is, therefore, so vague as to deprive
her of due process of law. She claims that her complaint was presented to the trial court
by a Motion to Quash which was overruled. Appellant does not differentiate between her
claims under the federal constitution and the Texas Constitution. Because appellant does
not argue that the Texas Constitution provides more protection to her than does the United
States Constitution, we will not address her state constitution claim separately. See Brown
v. State, 943 S.W.2d 35, 36 n.3 (Tex.Crim.App. 1997). 

 The State does not question whether appellant has preserved error as to the issue. 
See Cartier v. State, 2001 WL 454532, *2-3 (Tex.App.--Amarillo 2001, pet. ref'd). Rather,
the State asserts that the issue has been foreclosed by the decision of Morris v. State, 833
S.W.2d 624 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd), cert. denied, 507 U.S. 961
(1993). We agree with the State that Morris is determinative of appellant's first issue.

 The appellant in Morris was charged with a misdemeanor under former Section
34.07 of the Texas Family Code. (1) That section made it a misdemeanor to knowingly fail
to make a report required by Family Code § 34.01. Family Code § 34.01 provided that "A
person having cause to believe that a child's physical or mental health or welfare has been
or may be adversely affected by abuse or neglect by any person shall report in accordance
with Section 34.02 of the Texas Family Code." Appellant Morris urged that Family Code
§§ 34.01, 34.02, (which specified procedures for making the reports prescribed by Section
34.01), and 34.07 were unconstitutionally vague, both facially and as applied to her, and
thus violated her rights to due process of law. The appellate court held that the statutes
gave fair notice to a person of ordinary intelligence that the person was required to file a
report with one of the appropriate agencies when the person had cause to believe that a
child was being abused. As applied to Morris, the court held the facts showed that she
had cause to believe that the child involved was being subjected to abuse. 

 As to the matter before us, the facially-vague question is directly addressed, and
foreclosed, by Morris. The language challenged by appellant is not so vague that it facially
violates due process requirements. See Morris, 833 S.W.2d at 627. 

 As applied to appellant and her conduct, we note that MBR testified that she
reported multiple specific acts of sexual abuse by Keith to appellant on more than one
occasion, but that appellant said MBR was making up the stories. Keith testified that he
told appellant of a confrontation with MBR, then when he returned from work that evening,
appellant told him to leave the house and go live with his parents "until she found out
more." Appellant at that time told Keith that his story was similar to what MBR told her in
some ways, but very different in other ways. Those events took place on the Monday
before the CPS visit on Friday, July 30th. 

 Edwin Basham, a psychologist who consulted with appellant in August, 1999,
testified that appellant told him that before the CPS workers visited on July 30th, appellant
received reports from a babysitter that MBR claimed Keith "humped" her, and that
appellant questioned MBR and Keith about the matter. Appellant related to the
psychologist that both MBR and Keith denied any improper actions took place, but that
shortly after the babysitter's report, MBR returned from a visit to the Ritters and made
expanded allegations of sexual contact by Keith. According to Basham, appellant told him
that the reports by MBR to appellant and discussions between appellant, MBR and Keith
took place before the CPS visit of July 30th. 

 The evidence in this case gave appellant "cause to believe" that MBR, a ten-year-old child had been adversely affected by sexual abuse. The statute as applied to the
specific facts involved in appellant's case is not so vague as to violate her rights to due
process. See Morris, 833 S.W.2d at 627. Appellant's first issue is overruled. 

III. ISSUE TWO: LEGAL SUFFICIENCY 

 OF THE EVIDENCE 

 By her second issue, appellant asserts that the evidence is legally insufficient to
prove that she did not notify at least one of the governmental entities specified by Family
Code § 261.103 of the fact that MBR may have been abused. She does not challenge the
jury charge which specified that the statute required a person having cause to believe that
abuse may have occurred to make a report to (1) any local or state law enforcement
agency; (2) the department if the alleged or suspected abuse involves a person
responsible for the care, custody, or welfare of the child; (3) the state agency that
operates, licenses, certifies or registers the facility in which the alleged abuse or neglect
occurred; or (4) the agency designated by the court to be responsible for the protection of
the child. See Family Code § 261.103(a). She posits particularly that there is no evidence
that appellant did not make a report to some local or state law enforcement agency as set
out in subsection 1. 

 The State responds that it was not required to disprove a report by appellant to any
of the specific entities specified by statute. The State asserts that the entities specified
in the statute to which reports can be made are not elements of the offense, and that in
any event, the record contains both direct and circumstantial evidence sufficient to support
a finding that appellant did not report the possible abuse to any agency. The State again
cites Morris as authority. 

 When reviewing challenges to both the legal sufficiency and the factual sufficiency
of the evidence to support the verdict, we first review the legal sufficiency challenge. 
Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). The evidence is legally
sufficient if, after viewing the evidence in the light most favorable to the prosecution, a
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560 (1979); Clewis, 922 S.W.2d at 132. All the evidence is reviewed, but
evidence that does not support the verdict is disregarded. See, e.g., Chambers v. State,
805 S.W.2d 459, 461 (Tex.Crim.App. 1991). 

 There was evidence before the jury that MBR told appellant specifically and
graphically of being sexually molested multiple times by Keith, and that appellant
responded, in effect, that she did not believe MBR. Testimony from Basham was that
appellant related to him a series of events evidencing that she had notice via a babysitter
that Keith was possibly acting inappropriately toward MBR. Keith testified that he told
appellant before he and appellant were married that he had been accused of sexually
molesting his three-year-old daughter from a prior marriage, but that the charges had been
dismissed. 

 Psychologist Basham's testimony did not evidence that appellant reported to any
agency that Keith may have molested or abused MBR. Keith's testimony did not evidence
a report to any agency by appellant that Keith may have molested MBR, even though his
testimony established that appellant told him to move out of the home until she could find
out more about what happened. The testimony of CPS worker Mendez did not evidence
any report by appellant to CPS, nor any report to CPS by another agency that possible
abuse had been reported to such other agency. MBR's testimony did not evidence any
report to an agency by appellant. To the contrary, MBR testified that appellant's
statements and attitude after MBR reported the abuse to her indicated that appellant did
not believe MBR. Furthermore, after appellant was charged with the offense of failing to
report, appellant took MBR to appellant's attorney's office for an interview. En route to the
attorney's office, according to MBR's uncontradicted trial testimony, appellant discussed
some of the facts and dates surrounding the events of the end of July, 1999. Appellant,
however, did not discuss any reports she claimed to have made, although the basis of the
trip to the attorney's office was the charge that appellant did not make a report as required
by statute. 

 Viewing the evidence in the light most favorable to the jury's verdict, we conclude
that a rational jury could have inferred from the evidence and found beyond a reasonable
doubt that appellant did not report any of the events or reports she received about possible
abuse of MBR to any agency. Accordingly, the evidence is legally sufficient to support the
verdict. Appellant's second issue is overruled. See Jackson, 443 U.S. at 319, 99 S.Ct.
at 2789; Clewis, 922 S.W.2d at 132. 


IV. ISSUE THREE: FACTUAL SUFFICIENCY

OF THE EVIDENCE

 If the evidence is legally sufficient to support the verdict, we then review the factual
sufficiency challenge if one is properly raised. Clewis, 922 S.W.2d at 133. A factual
sufficiency review of the evidence begins with the presumption that the evidence
supporting the jury's verdict was legally sufficient under the Jackson test. Id. at 134.
Factual sufficiency review is accomplished without viewing the evidence through the prism
of "in the light most favorable to the prosecution," as the evidence is viewed in determining
legal sufficiency. Id. The verdict may only be set aside for factual insufficiency if the entire
record shows that (1) evidence supporting the jury's finding in favor of the party with the
burden of proof is so weak as to be clearly wrong and manifestly unjust, or (2) the
evidence supporting a finding adverse to the party with the burden of proof is so contrary
to the great and overwhelming weight of the evidence as to be clearly wrong or unjust . 
See Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000) (holding that Clewis is to be
read as adopting the complete civil factual insufficiency formulation). Where enough
evidence is before the factfinder that reasonable minds could differ on the meaning of the
evidence, or the inferences and conclusions to be drawn from the evidence, we may not
substitute our judgment for that of the factfinder. See Herbert v. Herbert, 754 S.W.2d 141,
144 (Tex. 1988). 

 Appellant points out significant credibility questions as to testimony by MBR,
Basham and Keith Monroe. She also attacks the State's implication at trial that appellant
manipulated, or attempted to manipulate, MBR's testimony when MBR had not lived in
appellant's home from the end of July, 1999, until the time of trial in November, 2000. She
attacks the State's charging her with the offense of failing to report when testimony
indicated that she only had four days to investigate whether MBR had been abused by
Keith, while the standard amount of time for CPS to investigate such an allegation is 30
days. She cites testimony that she was seemingly the only person protective of MBR
during the relevant time period. Appellant concludes that the lack of evidence that she
reported to some agency, as more fully set out in her issue two, and the evidence as a
whole mandates a conclusion that the jury's finding is manifestly unjust and shocks the
conscience.

 As an appellate court, we defer to the jury's resolution of credibility issues. The jury
was called upon to resolve significant conflicts in evidence and credibility questions. The
evidence supporting the jury's verdict is not so weak as to render the verdict clearly wrong
and manifestly unjust. See Johnson, 23 S.W.3d at 11. The evidence, therefore, is not
factually insufficient to support the verdict. Appellant's third issue is overruled. 

V. CONCLUSION 

 Having overruled appellant's three issues, we affirm the judgment of the trial court.


 Phil Johnson

 Justice


Do not publish. 
1. Tex. Fam. Code Ann. (Vernon 1986 & Supp. 1992). Further reference to the Family
Code will be by reference to "Family Code § ______." 




 color:#4F81BD;
 mso-bidi-language:EN-US;}
h3
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 3 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:3;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h4
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 4 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:4;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-style:italic;}
h5
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 5 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:5;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;}
h6
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 6 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:6;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;
 font-style:italic;}
p.MsoHeading7, li.MsoHeading7, div.MsoHeading7
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 7 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:7;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeading8, li.MsoHeading8, div.MsoHeading8
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 8 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:8;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
p.MsoHeading9, li.MsoHeading9, div.MsoHeading9
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 9 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:9;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0148.cv%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0148.cv%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0148.cv%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0148.cv%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0148.cv%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-10-00148-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



JANUARY
20, 2011

 



 

SHERRI CLARKSON, JOSEPH CLARKSON AND/OR ALL OTHER OCCUPANTS OF 2 REMINGTON
COURT,

RED OAK, TX 75154, APPELLANTS

 

v.

 

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF THE INDYMAC IMSC
MORTGAGE
TRUST 2007-HOA1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-HOA1 UNDER

THE POOLING AND SERVICING AGREEMENT

DATED JUNE 1, 2007, APPELLEE 



 



 

 FROM THE COUNTY COURT AT LAW NO. 1
OF ELLIS COUNTY;

 

NO. 09-C3855; HONORABLE GREG WILHELM, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

OPINION

Appellants, Sherri Clarkson, Joseph
Clarkson, and all other occupants of 2 Remington Court, Red
Oak, Texas 75154, appeal from the ruling of the trial court in a
forcible detainer action granting possession of the property at issue to appellee, Deutsche Bank. 
Appellants contend, through three issues, that the trial court erred in
granting possession to Deutsche Bank because: 1) Deutsche Bank did not comply
with Texas Property Code sections 24.002 and 24.005,[1]
2) the deed furnished did not support a prima
facie claim of title, and 3) there was no evidence that appellants
continued to occupy the property after demand to vacate was made.  We will affirm.

Factual and
Procedural Background

In 2006, the Clarksons
borrowed $341,500 secured by a deed of trust on the subject property.  Subsequently, in 2009, the property was
posted for foreclosure.  Deutsche Bank
purchased the property at public auction on July 7, 2009, and received a
substitute trustees deed to the property, which was subsequently filed in the
deed records of Ellis County, Texas. 
Deutsche Bank sent demand to vacate letters to appellants.  The letters advised appellants that they were
tenants at sufferance and that the property should be vacated within three days
or a forcible detainer action would be filed. 
Appellants did not vacate the property and Deutsche Bank filed suit for
forcible detainer.  After a hearing, the
justice court rendered judgment that Deutsche Bank was entitled to possession
of the property.  Appellants appealed the
ruling to the county court at law.  

The county court at law conducted a de novo trial of Deutsche Banks forcible
detainer action and granted possession to Deutsche Bank.  Appellants appeal this decision.  We affirm.

 

 

Forcible
Detainer

Initially, we observe that an action
for forcible detainer is designed to determine the right to immediate
possession of real property where there is no claim of unlawful entry.  See Williams v. Bank of New York
Mellon, 315 S.W.3d 925, 926 (Tex.App.Dallas
2010, no pet.).  It is intended to be a
speedy, simple, and inexpensive means to obtain immediate possession of
property.  See Marshall v.
Housing Auth. of San Antonio, 198 S.W.3d 782, 787
(Tex. 2006).  Title to the property in
question is not at issue in a forcible detainer action.  See Scott v. Hewitt, 127 Tex.
31, 90 S.W.2d 816, 818-19 (1936).  Accordingly, the only issue is who will have
the right of immediate possession.  Williams,
315 S.W.3d at 927. 
In fact, whether or not a sale pursuant to a deed of trust is invalid
may not be determined in a forcible detainer action.  Id. 

As previously identified, appellants
bring forth three issues contesting the validity of the trial courts judgment
granting possession to Deutsche Bank.  We
shall answer each in turn.

Compliance with Texas Property Code
and Prima Facie Claim

             Clarksons first two issues contend that the
trial court erred because Deutsche Bank failed to abide by the Texas Property
Code in two particulars.  Appellants
first contention is that the demand for possession was not sent by the person
entitled to possession and, further, the notice that was sent was not in the
form required.  See Tex. Prop. Code Ann. §§ 24.002, 24.005.[2]  Appellants next contend that the substituted
trustee deed, through which Deutsche Bank claims title, was insufficient to
support a prima facie claim of
title.  This is so, according to
appellants, because the deed was not supported by an unqualified affidavit of a
person with personal knowledge.  See
§ 51.002(e) (West Supp. 2010).  

At the trial de novo, Deutsche Bank introduced an exhibit C which contains
copies of the demand to vacate notices that had been sent to each of the
appellants.  The demand letters were sent
certified mail, return receipt requested. 
Each letter is identified by a certified article number.  Contained within the exhibit is a
corresponding track and confirm receipt from the United States Postal Service
verifying that the specified certified article number was, in fact, delivered
to the address reflected on the mail envelope. 
Additionally, the sworn petition for the detainer actions contains a
sworn averment that three days notice was given to appellants.

The amended petition for possession,
that served as the basis for the judgment in favor of Deutsche Bank, contained
the affidavit of the attorney for Deutsche Bank in which the affiant swore that
he was the custodian of the records for the law firm and that all of the
records attached were maintained in the regular course of the law firms
business.  Attached to the petition was
the substitute trustees deed.  Additionally,
at the hearing in the trial court, the substitute trustees deed was offered
and admitted without objection.    

            By
attacking the notice to vacate and proof of the prima facie case to support the forcible detainer action,
appellants issues are actually attacking the underlying foreclosure
procedure.  See Williams, 315 S.W.3d at 927.  A
forcible detainer action is not the proper avenue to attempt such an action;
rather, the Clarksons should pursue those defects, if
any, in a wrongful foreclosure action or suit to set aside the substitute
trustees deed.[3]  See  Scott, 90 S.W.2d at
818-19.  Here, Deutsche Bank proved up
its right of possession by presenting evidence of the foreclosure, substitute
trustees deed, and notice to vacate the premises.  Accordingly, the trial court did not err in
overruling appellants objections based upon the alleged non-compliance with
the provisions of the Texas Property Code. 
Appellants first two issues are overruled.

Sufficiency of the Evidence

            Appellants
third issue argues that there was no evidence to support the proposition that
they remained on the premises after being given notice to vacate.  The refusal to leave by a tenant at
sufferance after a foreclosure is one of the elements required to be proven in
a forcible detainer action.  See Goggins v. Leo,
849 S.W.2d 373, 377 (Tex.App.Houston [14th
Dist.] 1993, no writ).  

            A
no evidence challenge requires a reviewing court to review all of the evidence
in the light most favorable to the verdict, crediting favorable evidence if a
reasonable fact finder could, and disregarding contrary evidence unless a
reasonable fact finder could not.  See City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005).  If more than a
scintilla of evidence exists in the record to support the finding, then the no
evidence challenge fails.  See Tarrant
Regl Water Dist. v. Gragg,
151 S.W.3d 546, 552 (Tex. 2004).  A scintilla of evidence is evidence so weak
that it creates no more than a surmise or suspicion of the existence of the
fact sought to be proven.  See Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601
(Tex. 2004).

            A
review of the record before the trial court reflects that the amended sworn
complaint alleges that appellants refused to vacate the premises after a
written demand to do so.  Further, the
clerks record reveals that appellants were served with the petition for
forcible detainer at the residences in question after the date the notice to
vacate was given.  In a factually similar
case, the Fifth District Court of Appeals held that where the complaint states
that the defendant was given notice to vacate the premises and further states
that he refused to do so, such facts are sufficient to demonstrate entitlement
to possession of the property.  Powelson
v. U.S. Bank Natl Assn, 125 S.W.3d 810, 811 (Tex.App.Dallas 2004, no pet.).  The record before us provides more than a
scintilla of evidence that appellants refused to vacate the premises after
proper demand had been made to do so.  Tarrant
Regl Water Dist., 151 S.W.3d
at 552.  Accordingly, appellants
third issue is overruled.  

Conclusion

            Having
overruled all of appellants issues, the judgment of the trial court is
affirmed.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

 











[1] See Tex.
Prop. Code Ann. §§ 24.002
(West 2000), 24.005 (West Supp. 2010).





[2] Further reference to the Texas Property Code will be
by reference to § ___ or section ___.





[3] Any challenge to title in the property or wrongful
foreclosure would be claims held by the Clarksons,
rather than by the appellants in this forcible detainer action.